UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES LEE SHIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:06-CV-682 (CEJ) |
| | ) | |
| STEVE LONG, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants' motion for summary judgment. Plaintiff has filed a response in opposition to the motion and the issues are fully briefed. Plaintiff James Lee Shields is an inmate incarcerated at the Potosi Correctional Center (PCC). He alleges that prison officials issued retaliatory conduct violations and improperly handled his legal and other mail. He filed this action pursuant to 42 U.S.C. § 1983, seeking damages from defendants Steve Long (Assistant Director), Fred Johnson (Superintendent I), Chuck Dwyer (Associate Superintendent of Offenders Management), Ian Wallace (Functional Unit Manager), Steve Larkins (Associate Superintendent), Sharon Gifford (Functional Unit Manager), Ron Nixon (Grievance Officer), Robert Savage (Grievance Officer), Tim Lancaster (Correctional Officer II), Freda Moore (Classification Caseworker), Sharon Sansoucie (Correctional Officer I and Mailroom Supervisor), Unknown Rush (Correctional Officer I), and Philip Nixon (Functional Unit Manager).[1]

---

[1]Claims against defendants Don Roper, Unknown Mailroom Personnel, Michael J. Layton, Gwen Botkin, Unknown Hodges, Unknown Dicus, Elaini Dix, John Doe, Lay Short, M. Hammond and Sharon Sanscraw were dismissed pursuant to 28 U.S.C. § 1915(e)(2)(b); defendant Pat Smith was dismissed pursuant to Fed.R.Civ.P. 12(b)(6); defendants Tim Watson, Linda D. Wilkson, B. Halbert, and Lind Edgar were dismissed pursuant to Fed.R.Civ.P. 4(m). Defendants assert, and plaintiff does not contest, that

## I. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

## II. Background

**Claim A:**

---

Ron Nixon and Philip Nixon are the same person.

Plaintiff has withdrawn his claim that he was deprived of a property interest without due process when, for three months in 2004, he was transferred from a job earning premium pay to one earning base pay.

Claim B:

On July 17, 2004, Corrections Officer Tim Watson sanctioned plaintiff for sleeping on count. Plaintiff alleges Officer Watson retaliatorily imposed a 10-day activity restriction on him, while other prisoners with similar violations received verbal warnings. Plaintiff alleges that defendants Lancaster, Moore, Larkin, Long, Nixon, and Wallace violated his constitutional rights by upholding the sanction. Plaintiff does not dispute that he committed the conduct violation and, thus, any claim for retaliatory discipline fails. See Bandy-Bey v. Crist, 578 F.3d 763, 766 (8th Cir. 2009) (inmate's retaliation claim fails if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule). To the extent that plaintiff contends that the 10-day activity restriction was unconstitutionally harsh, that claim fails as well: plaintiff testified that during the restricted period he was unable to use the telephone or go out in the yard for recreation and was required to wear an orange suit. These sanctions do not amount to an atypical and significant hardship as required to establish an unconstitutional deprivation of a liberty interest. See Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) (quoting Sandin v. Conner, 515 U.S. 472, 483-84 (1995)). Because there is no valid claim with respect to Watson's imposition of the sanction in the first place, plaintiff's claim with respect to those defendants who upheld the sanction must also fail.

Claim C:

Plaintiff contends that he was denied access to the courts when the law library was closed on several days in August 2005.

**"To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." White v. Kautzky, 494 F.3d 677, 680 (8th Cir. 2007). Plaintiff does not contend that his ability to litigate a nonfrivolous claim was in any way impeded by the library closures in August 2005, and defendants are entitled to summary judgment on this claim.**

**Claim D:**

**Plaintiff alleges that, on September 27, 2002, his son mailed him an envelope containing legal documents. Plaintiff did not receive the envelope, which was properly addressed and had sufficient postage, until October 17, 2002. Plaintiff alleges that defendants deliberately delayed delivering the letter to him for the purpose of interfering with his rights.**

**Defendants contend that the letter was received at the institution on the same day it was delivered to plaintiff. They submit a copy of the mail room log, showing an entry dated October 17, 2002, for a piece of mail addressed to plaintiff from plaintiff's son. Defts. Sum Jud. Mot. Ex. D [Doc. #129-4]. Defendant Sansoucie, mailroom supervisor, testifies by affidavit that this record establishes that the letter was received at the institution on October 17th. Ex. T [Doc. #129-23]. In support of his contention that the institution received the letter before October 17th, plaintiff testified at deposition that he does not believe that the post office would make "this kind of big mistake." Ex. J-1, Plaintiff's Dep. at 116 [Doc. #129-12]. Plaintiff's belief is not sufficient to create a genuine dispute of material fact with respect to the date on which the institution received the letter from plaintiff's son.**

Claim E:

In Claim E, plaintiff claims that a Federal Express priority envelope containing a birthday card was delivered to the institution on February 20, 2003, but was not delivered to him until March 4, 2003. Defendants submit evidence that the FedEx delivery was misidentified as "property," rather than mail, and was taken to the property room. Due to a heavy volume of inmate transfers at that time, the package was not immediately processed. Defendants argue that the evidence establishes that there was no intentional delay in delivering the birthday card. Furthermore, they contend, the delay in this instance was insufficient as a matter of law to state a constitutional claim.

The First Amendment entitles inmates to send and receive mail, subject to the institution's right to censor letters or withhold delivery if necessary to protect institutional security. Hudson v. Palmer, 468 U.S. 517, 547 (1984); see also Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) ("a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment.") However, in order to state a claim for relief, a plaintiff must allege more than sporadic, short-term delays in his receipt of his mail. See Rowe v. Shake, 196 F.3d 778, 782 (7th Cir. 1999) (inmate failed to state a claim for relief where institution delayed delivery of 34 items from 2 to 20 days). The delay in delivering the FedEx package in this instance amounts to no more than a short-term delay. Defendants are entitled to summary judgment on this claim.

Claims F and G:

On October 25, 2004, a corrections officer delivered to plaintiff a piece of mail with a hand-written return address for "Nadine V. Nunn, Esq., P.O. Box 25902, 63136." A type-written label affixed to the front of the envelope stated "Special Mail-

**Open Only in the presence of the inmate." The envelope does not identify the contents as "legal mail," although the return address indicates that it was from a lawyer. Ex. F. [Doc. #129-7]. The letter was opened before it was delivered to plaintiff. Plaintiff identifies the correspondence as legal mail that should have been opened only in his presence and alleges that defendants conspired to violate his rights. Defendants assert that the letter was opened because it was not immediately clear from the face of the envelope that it was privileged mail. Indeed, the envelope bore some characteristics of correspondence that trigger suspicion, including handwritten envelopes with restrictive endorsements such as "personal" or "confidential."**

**On September 2, 2005, mailroom staff opened an envelope addressed to plaintiff from the United States Supreme Court outside his presence. Mailroom staff attached a notice that the letter had been opened inadvertently and forwarded it to plaintiff, who received it on September 7th. Plaintiff testified that the envelope contained a blank form for a petition for writ of certiorari.**

**Mail to or from an inmate's attorney, identified as such, may not be opened except in the presence of the prisoner. Gardner v. Howard, 109 F.3d 427, 430-31 (8th Cir. 1997). An "isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation." Id. (citing Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990); Morgan v. Montanye, 516 F.2d 1367, 1370-71 (2d Cir. 1975)). Plaintiff has presented no evidence of improper motive and does not allege that the opening of these pieces of mail outside his presence interfered with his right to counsel or impeded his access to the courts. Because plaintiff cannot demonstrate that his constitutional rights were violated, his conspiracy claim also fails. Askew v. Millerd,**

191 F.3d 953, 957 (8th Cir. 1999). Defendants are entitled to summary judgment on this claim.

Claim H:

On November 18, 2003, plaintiff attempted to give defendant Rush legal mail shortly after the 7:00 a.m. deadline.[2] Rush refused to accept the mail, which plaintiff put in the housing unit mailbox for afternoon pick up. Several days later, plaintiff observed Rush accept mail from a white inmate after 7:00 a.m. Plaintiff, who is African-American, alleges that defendant Rush's refusal of his mail was improperly based on his race.

In order to establish an equal protection claim, plaintiff must show that he was treated differently from similarly-situated inmates and that the different treatment was based upon either a suspect classification or a fundamental right. Patel v. United States Bureau of Prisons, 515 F.3d 807, 815 (8th Cir. 2008). Plaintiff's mere belief that Rush's actions were based on race is not sufficient to establish that she acted with discriminatory intent. Defendants are entitled to summary judgment on this claim.

Claim I:

Plaintiff alleges that on several occasions he sent certified mail and that defendants either delayed or failed to return the receipts and signature cards for such mail. He does not allege that the mail did not reach its intended recipients. Plaintiff has not identified any harm arising from the alleged delay or failure to return the receipts and signature cards and defendants are entitled to summary judgment.

---

[2]Defendants submit Standard Operating Procedure 13-1.1 -- Offender Mail Procedures, effective September 23, 2002. Ex. Y [Doc. #129-28]. The Procedure provides that prisoners in general population should place mail in mailboxes located in the housing units before 7:00 a.m. The procedure states that no mail will be collected after 7:00 a.m. Id. at 11-12.

In conclusion, defendants have established that they are entitled to summary judgment with respect to plaintiff's claims. Plaintiff's cross motions for summary judgment will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Doc.# 129] is granted.

**IT IS FURTHER ORDERED** that all other pending motions are denied as moot.

A judgment in accordance with the Memorandum and Order will be separately entered.

CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 30th day of September, 2010.